John W. HALL, Sr. *v.* Reed W. THOMPSON, Mayor of the City of North Little Rock, Arkansas, in his individual and official capacity

83-177                                    669 S.W.2d 905

Supreme Court of Arkansas
Opinion delivered June 11, 1984

*John Wesley Hall, Jr.*, for appellant.

*Jim Hamilton*, City Atty., for appellee.

THOMAS L. CASHION, Special Justice. Appellant filed a taxpayer's suit for a declaratory judgment to keep the City of North Little Rock from paying a fee to a private attorney. The attorney had represented the mayor of North Little Rock, who had been charged with disorderly conduct and resisting arrest. These charges were subsequently dismissed. The complaint alleged an illegal exaction which is prohibited by art. 16, § 13, Constitution of the State of Arkansas. The chancellor dismissed the complaint and this appeal resulted.

John W. Hall, Sr., instituted this suit against Reed W. Thompson in his capacity as mayor and as an individual. Thompson hired a private attorney to defend him against the charges of disorderly conduct and resisting arrest. The arrest grew out of an incident of October 12, 1982, when the mayor went to the police and courts building. The chief of

police was in the process of investigating a wrecker contract entered into between the city and a third party. As part of the investigation, subpoenas were issued for several members of the mayor's staff. When the mayor went to the police department to find out what was happening some type of disagreement between him and the chief of police ensued and the chief arrested the mayor for disorderly conduct and resisting arrest. The mayor denied any wrongdoing. At the trial it was stipulated that Chief Younts was a well qualified officer and if he were present he would testify he had probable cause to arrest Thompson. Prior to the trial of the case, the bill for the private attorney, in the amount of $3,600, was paid from the mayor's emergency fund. No appropriation for the attorney's fee was made by the city council. Although there had been a resolution passed by the city council agreeing to appropriate funds as needed for the purpose of paying outside counsel in matters requiring use of such attorneys there was no effort to proceed in accordance with the resolution.

The funds used by Thompson to pay his privately retained defense counsel were taxpayers' money. The Arkansas Constitution, art. 16, § 13, authorizes any taxpayer to institute suit in behalf of himself and all other interested parties against illegal exactions. The suit was properly filed. The fact that the funds sought to be prevented from being expended had been spent before the chancellor rendered the decree would ordinarily render the question moot. However, we reach the merits because of the possibility of future similar disputes. To fail to reach the merits of the case would tend to encourage the expenditure of public monies without proper procedures and safeguards.

We now consider the argument that this expenditure was an illegal exaction. There is no statutory authority in Arkansas allowing payment of attorney's fees for public officials and employees when they are terminated or charged with criminal offenses. Even if a public employee is wrongfully discharged and subsequently ordered reinstated he is not authorized to collect attorney's fees from public funds. *Williams* v. *Little Rock Civil Service Commission,* 266 Ark. 599, 587 S.W.2d 42 (1979). Other jurisdictions have also held

that attorney's fees are not recoverable by public officials or employers who are successful in getting the charges dismissed. *Chapman* v. *City of New York*, 168 N.Y. 80, 61 N.E. 108 (1901); *Schieffelin* v. *Henry*, 123 Misc. 792, 206 N.Y.S. 172 (1924); *Guerine* v. *City of Northlake*, 1 Ill. App. 3d 603, 274 N.E.2d 625 (1971); *Holtzendorff* v. *Housing Authority of Los Angeles*, 250 Cal. App. 2d 596, 58 Cal. Rptr. 886 (1967), cert. denied, 389 U.S. 1038 (1968). In *Chapman*, supra, the court stated:

> It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office, he assumes the risk of defending himself against unfounded accusations at his own expense.

Many other cases from various jurisdictions hold that payment of attorney's fees for defending against criminal charges is the responsibility of the person so charged.

The official duties of a public official or employee never require him to participate in criminal activities except in most unusual cases. Certainly Mayor Thompson was not charged with performing his public duties. He was charged with violating criminal laws.

The fact that he was not convicted does not change the reason for the arrest. Nothing in the record tends to show that the public benefitted from the confrontation of the two officials. There being no public benefit by the conduct of the mayor, it follows that the public should not pay for his defense.

If the mayor were falsely arrested, he has a right to claim against the responsible parties. If he should recover, it would be purely personal.

Although the exaction was illegal we are unable to do more than declare it so. Neither the city nor the attorney is a party in this proceeding.

30

Reversed.

HAYS, J., not participating.

DUDLEY and HOLLINGSOWRTH, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. I dissent both on a procedural basis and on a substantive basis.

The appellant, John W. Hall, Sr., as a taxpayer, filed suit for a declaratory judgment against the appellee, Reed W. Thompson, in his capacity as mayor and as an individual. The complaint alleged appellee intended to use public funds to employ attorneys to defend misdemeanor charges filed against him and that such a future expenditure would be against public policy. The appellant sought a declaratory judgment that appellee's proposed actions were illegal and also sought an injunction to prevent the anticipated expenditure. He did not seek a temporary restraining order, and did not seek to advance the case as a matter of significant public interest. The public funds were expended long before the case came to trial. The appellant did not amend his pleadings although the trial judge granted leave to amend. The suit for declaratory judgment and injunction became moot when the funds were expended. It is still moot. We do not ordinarily decide moot issues. *Mabry* v. *Kettering*, 92 Ark. 81, 122 S.W. 115 (1909). There is a second, and more significant, procedural reason not to decide this moot case.

After the public funds were expended the City of North Little Rock became a necessary party. Yet the city was not made a party, nor did appellant amend to allege that he was acting in a trust capacity for the city. Even now, appellant, John W. Hall, Sr., is the only plaintiff. He has made no attempt to comply with Rule 23, the class action rule. *See City of Little Rock* v. *Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982). The attorneys who received the funds from the city were not made parties to the action. The appellant does not seek to recover the money which was paid out. The monetary issue was not properly tried, and, in tacitly admitting the lack of necessary parties, the majority states: "Although the

exaction was illegal we are unable to do more than declare it so." Consequently, the taxpayers do not obtain the monetary judgment for an expenditure which the majority holds is illegal. Again, the appeal should be dismissed.

The majority chooses to disregard our established rules of procedure and, instead, to issue an advisory opinion which, in turn, establishes our substantive common law. I am of the other view on that issue also.

The facts surrounding the misdemeanor charges are not in dispute. The arresting officer, former Police Chief William D. Younts, was allowed to refuse service of summons and, consequently, did not appear at the trial.

Appellant's attorney was surprised by Younts' failure to appear and moved for a continuance. In order to avoid a continuance appellee stipulated that if Younts had appeared, he would have testified that he thought he had probable cause to arrest appellee. The only witness at the trial, the appellee, testified that he went to the mayor's office at the city hall about 3:40 on the afternoon of October 12, 1982. The city clerk told him that Chief Younts and another officer had intimidated her. She told him the two officers had subpoenaed both the city finance director and the city purchasing officer, and, at that time, they were still at the police department. The appellee testified that he knew the city finance director had suffered a heart attack. He testified that he was concerned about the finance director's physical condition and wondered why it was necessary for the police to subpoena the city employees to the police department. He stated that, as part of his official duty, he left his office to go to the police department. He testified that while he was in the hallway, just outside the chief's office, he was arrested by Chief Younts and charged with disorderly conduct and resisting arrest. The appellee testified that he was not disorderly and did not even raise his voice. In municipal court, the appellee was found not guilty on both charges. At the trial of this case, the trial judge did not find Chief Younts had probable cause. In the record before this court, the charges were nothing more than unfounded accusations. The majority opinion recites, "When a citizen accepts a

public office, he assumes the risk of defending himself against unfounded accusations at his own expense."

Certainly, public funds cannot be spent to defend criminal activities by public officials, but the power and the duty of a municipality to defend its officials against unfounded and unsupported criminal charges is an entirely different matter. The independence and integrity of a public office and of the public officer demand their protection against groundless assaults upon the discharge of public duty. *See City of Birmingham* v. *Wilkerson,* 194 So. 548 (1940). A public official should be allowed to feel free to fulfill his public duties without worrying about the expense of defending against unfounded accusations. If a municipality, or other governmental entity, is unable to protect its officers from groundless charges, a ruthless person could conceivably prevail over all but wealthy public officials.

Pragmatically, I am concerned about the substantive law embodied in the majority opinion. I do not know who public officials are or whether this holding will be expanded to other governmental entities or whether it will be expanded to civil accusations.

For example, are police officers public officials? If so, how many times can a policeman afford to defend himself against unfounded accusations? Are judges public officials? If so, must they expend their own money every time an inmate files some unfounded accusation and, if so, how long can they afford to serve?

Perhaps the members of the General Assembly will act to change the public policy to one which will clearly allow governmental entities to protect public officials from the expense of defending unfounded accusations.