(No. 78181.—

WENDELL WRIGHT *et al.*, Appellees, v. THE CITY OF DANVILLE, Appellant.

*Opinion filed December 19, 1996.*

392

BILANDIC, C.J., took no part.

Craig H. DeArmond, of Kurth & DeArmond, of Danville, for appellant.

Everett L. Laury and Gregory G. Lietz, of Hutton, Laury, Hesser, Lietz & Wilcox, of Danville, for appellees.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiffs, Ernie A. Cox, Jerome D. Brown, and Raymond T. Randall, former commissioners of the City of Danville, Kevin Scharlau, as executor of the estate of former commissioner Wilbur Scharlau, and Wendell Wright, former corporation counsel, filed a complaint seeking reimbursement from the city of attorney fees and litigation expenses incurred in defending the criminal prosecution of the commissioners and corporation counsel. The circuit court of Vermilion County found that indemnity was not warranted and dismissed the complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1994)). The appellate court reversed, holding that genuine issues of material fact existed which precluded judgment as a matter of law for the city. 267 Ill. App. 3d 375. We granted the city's petition for leave to appeal (155 Ill. 2d R. 315), and we reverse.

## BACKGROUND

The present appeal arises out of attempts by plaintiffs to recover attorney fees and litigation expenses incurred by the former commissioners and corporation counsel in their defense of criminal charges of official misconduct and conflict of interest. The criminal prosecutions resulted from the manner in which the

group negotiated the settlement of a lawsuit filed against the commissioners and the city.

In January 1987, a group of African-American residents of Danville filed a lawsuit in federal district court against the city and its commissioners alleging that the nonpartisan, at-large, citywide process for electing commissioners excluded African-American representation and diluted minority voting strength, thereby violating the Voting Rights Act of 1965 (42 U.S.C. § 1973b (1982 & Supp. V 1987)). The commissioners and corporation counsel negotiated a proposed settlement of the voting rights lawsuit which would change the form of government from a mayor-commissioner system to a mayor-alderman system with aldermen elected from seven two-member districts. The settlement also provided that the present commissioners would be appointed as administrators of the various departments that corresponded with their current respective commission duties. These newly created administrative positions would be guaranteed for a minimum of three years at salaries the commissioners would set themselves.

The Vermilion County State's Attorney, arguing that the proposed settlement was a conflict of interest, issued subpoenas for the commissioners and corporation counsel to appear before the grand jury. The federal district court enjoined the grand jury proceedings and added the State's Attorney to the proceedings before it. Subsequently, the federal district court held hearings on the proposed settlement. These hearings revealed that the commissioners and the corporation counsel knew that they could not prevail in the voting rights litigation. The commissioners contended, however, that they needed to stay in office for a period of time after the new aldermen were elected in order to ensure a smooth transition into the new system of government. The federal district court approved and entered the consent

decree settling the voting rights suit and dissolved the injunction against the State's Attorney.

Less than two weeks later, the commissioners enacted a new indemnity ordinance. The ordinance, suggested by the corporation counsel, added indemnification for city appointees, which included the positions of corporation counsel and the new department administrators. In addition to civil indemnity, the ordinance provided indemnity for criminal actions if the person seeking indemnity had no reasonable cause to believe his conduct was unlawful and the act or omission was within the scope of the office or employment.

Soon thereafter, the State's Attorney reconvened the grand jury. At the grand jury proceedings, the commissioners testified that they would receive personal benefits under the federal consent decree and that they would never have agreed to the settlement without the retention provisions. In addition, the corporation counsel testified that the group felt that they were being asked to sacrifice their personal positions and that "if they were going to give up something, they were entitled to something in return." Subsequently, the grand jury returned an eight-count indictment against the commissioners and corporation counsel charging official misconduct and conflict of interest.

The federal district court again enjoined the state prosecution on the grounds that it had previously resolved the issue of the commissioners' and corporation counsel's criminal liability. However, the federal court of appeals reversed, finding that the district court had only determined that the city had the power to enter into the decree, and not that the negotiation process was lawful. *Derrickson v. City of Danville*, 845 F.2d 715, 723 (7th Cir. 1988).

Subsequently, the group stood trial in the circuit court of Vermilion County on the criminal charges of

violating conflict of interest (Ill. Rev. Stat. 1989, ch. 24, par. 3—14—4; ch. 102, par. 3) and official misconduct (Ill. Rev. Stat. 1989, ch. 38, par. 33—3) statutes. During the bench trial, the commissioners and corporation counsel admitted that they had no right to require that they retain their jobs as a condition of settling the voting rights litigation and that they were not legally entitled to retention. The circuit court found all of the commissioners and the corporation counsel guilty of official misconduct (Ill. Rev. Stat. 1989, ch. 38, par. 33—3(c)) and violating the prohibitions against municipal officials holding pecuniary interests in governmental contracts (Ill. Rev. Stat. 1989, ch. 24, par. 3—14—4(a); ch. 102, par. 3(a)). The commissioners were each sentenced to two years' conditional discharge and fined $1,000. The corporation counsel was sentenced to two years' conditional discharge, 90 days' imprisonment, and fined $5,000.

While the appeal of their convictions was still pending before the appellate court, Commissioner Wilbur Scharlau died. The appellate court abated all proceedings against Scharlau *ab initio* and vacated his conviction. Subsequently, the appellate court reversed the convictions (*People v. Scharlau*, 193 Ill. App. 3d 280 (1990)); however, this court reversed the appellate court and reinstated the convictions (*People v. Scharlau*, 141 Ill. 2d 180 (1990)). Thereafter, the commissioners and corporation counsel were unsuccessful in seeking a writ of *habeas corpus* in federal court. *Wright v. DeArmond*, 977 F.2d 339, 343-44 (7th Cir. 1992). As a result of this prolonged litigation, the group incurred attorney fees and litigation expenses of $321,311.47.

The present appeal arises out of plaintiffs' two-count complaint filed in the circuit court of Vermilion County seeking reimbursement of the attorney fees and litigation expenses, but not criminal fines, from the city. The

complaint was based on two Danville indemnity ordi-
nances, number 7192 (Danville, Ill., Ordinance No. 7192
(eff. July 8, 1986)) and number 7237 (Danville, Ill.,
Ordinance No. 7237 (eff. March 10, 1987)) (count I), and
on common law indemnity (count II). The pertinent
ordinance was passed by the commissioners subsequent
to the entry of the consent decree in federal district
court. The relevant language from the ordinance fol-
lows:

"Where the Mayor, member of the City Council, or any
appointee of the Mayor or any member of the City
Council, has acted in his official capacity, the City shall
indemnify the Mayor, member of City Council, or any ap-
pointee of the Mayor or member of the City Council who
was or is a party or is threatened to be made a party to
any threatened, pending, or completed action, suit, or
proceeding by reason of the fact that the person is or was
the Mayor, member of the City Council, or any appointee
of the Mayor or any member of the City Council, of the
city. Under this indemnification, the city shall pay all ex-
penses (including attorneys' fees), judgments, fines, and
amounts paid in settlement actually and reasonably
incurred by the person in connection with such action,
suit, or proceeding if he acted in good faith and in a man-
ner he reasonably believed to be in or not opposed to the
best interests of the city. Such indemnification by the city
shall apply to any criminal action or proceeding, if the
indemnified person had no reasonable cause to believe his
conduct was unlawful, and any act or omission within the
scope of the office or employment." Danville, Ill., Ordi-
nance No. 7237 (eff. March 10, 1987).

The city subsequently filed a combined motion to
dismiss pursuant to sections 2—615 and 2—619(a)(9) of
the Code of Civil Procedure (735 ILCS 5/2—615,
2—619(a)(9) (West 1994)). In support of its motion, the
city submitted certified copies of the trial court's find-
ings in the criminal prosecution of the commissioners
and corporation counsel and this court's opinion affirm-
ing the criminal convictions. The circuit court, finding

no basis for indemnity under either the ordinances or common law indemnity, granted the city's motion to dismiss. The circuit court also observed that the commissioners' act of amending the ordinance to provide additional indemnity "tainted the circumstances in such a way" that indemnity was improper. The appellate court reversed. 267 Ill. App. 3d 375. It concentrated on the language of the indemnity ordinance and determined that the plaintiffs could conceivably prove a set of facts that would enable them to recover and, therefore, the city was not entitled to judgment as a matter of law.

The city argues before this court that the appellate court must be reversed and the trial court's dismissal of the action affirmed because (1) Danville's indemnity ordinance is invalid as against the public policy which prohibits the indemnification of expenses arising from one's own willful misconduct; (2) the doctrine of collateral estoppel precludes plaintiffs from relitigating the issue of scope of employment which was determined by the commissioners' and corporation counsel's criminal convictions; and (3) plaintiffs cannot recover under a theory of common law indemnity because they are the ones who engaged in wrongful conduct.

## ANALYSIS

The question presented by a motion to dismiss pursuant to section 2—615 is whether sufficient facts are contained in the pleadings which, if established, would entitle the plaintiff to relief. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). The circuit court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recovery. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 488 (1994). If a cause of action is dismissed pursuant to a section 2—619 motion on the pleadings, the questions on appeal are whether a genuine issue of material fact exists and

whether the defendant is entitled to a judgment as a matter of law. *Illinois Graphics Co.*, 159 Ill. 2d at 494. Nevertheless, a dismissal pursuant to section 2—619 may be affirmed on any grounds which are called for by the record regardless of whether the circuit court relied on those grounds or whether the circuit court's reasoning was correct. *Beckman v. Freeman United Coal Mining Co.*, 123 Ill. 2d 281, 286 (1988).

I. Validity of the Indemnity Ordinance

The city contends that plaintiffs cannot recover under the indemnity ordinance because it is invalid as against public policy. In support of this argument, the city cites cases for the general proposition that agreements to indemnify against one's own willful misconduct are contrary to public policy and thus unenforceable. See, *e.g.*, *Davis v. Commonwealth Edison Co.*, 61 Ill. 2d 494, 500-01 (1975). However, the city's reliance on such precedent is misplaced. All the cases cited involved indemnification under provisions of an insurance policy or other type of contract. See *Davis*, 61 Ill. 2d at 495-96 (indemnity clause in construction contract); *West Suburban Mass Transit District v. Consolidated R. Corp.*, 210 Ill. App. 3d 484, 489-91 (1991) (indemnity clause in agreement regarding use of railroad tracks); *Rubenstein Lumber Co. v. Aetna Life & Casualty Co.*, 122 Ill. App. 3d 717, 717-18 (1984) (indemnity clause of insurance policy). As the city itself observes, this case involves no contract or bargained-for agreement which plaintiffs rely on for indemnity. Rather, plaintiffs rely on an indemnity ordinance which was passed by the commissioners to place liability on the municipality for certain litigation brought against its officials. The General Assembly has expressly authorized local public entities to indemnify their officers and employees in certain situations. See 745 ILCS 10/2—302 (West 1994) (local public entity may indemnify employees for judgment and costs

of certain civil actions; however, it may not indemnify punitive damage awards); 745 ILCS 10/9—102 (West 1994) (local public entity is empowered to pay certain tort judgments entered against an employee).

However, even if the indemnity ordinance does not violate public policy, public policy is not the only limitation a local public entity encounters when it determines how to expend its public funds. The expenditure of public funds must be for a public purpose. Ill. Const. 1970, art. VIII, § 1; see also *Elsenau v. City of Chicago*, 334 Ill. 78, 81 (1929); *City of Elmhurst ex rel. Mastrino v. City of Elmhurst*, 272 Ill. App. 3d 168, 173 (1994); 65 ILCS 5/8—1—2 (West 1994). Defraying the costs of purely private litigation has always been outside the bounds of a proper public purpose. See, *e.g.*, *City of Chicago v. Williams*, 182 Ill. 135 (1899); *City of Elmhurst ex rel. Mastrino*, 272 Ill. App. 3d at 173.

Plaintiffs assert that the indemnity ordinance was enacted for a public purpose and to benefit the city. Although a legislative body may have broad discretion in determining what constitutes a public purpose (*People ex rel. City of Salem v. McMackin*, 53 Ill. 2d 347, 355 (1972)), that discretion is not unlimited and courts will intervene when public property is devoted to a purely private use (*City of Elmhurst ex rel. Mastrino*, 272 Ill. App. 3d at 173). An unsuccessful criminal defense involving the holder of a public office, but not arising out of the lawful exercise of the duties of that office, is purely private litigation (see *Guerine v. City of Northlake*, 1 Ill. App. 3d 603 (1971)), and as such, absorbing the costs of such litigation cannot be considered a proper public purpose (*City of Elmhurst ex rel. Mastrino*, 272 Ill. App. 3d at 173). Moreover, even a home rule unit, such as Danville, may only exercise powers and perform functions pertaining to its government and affairs. Ill. Const. 1970, art. VII, § 6(a). Legal expenses privately

incurred by holders of public office pursuant to their conviction of criminal official misconduct and corruption charges cannot reasonably be said to pertain to a home rule unit's government and affairs.

Plaintiffs cite *City of Montgomery v. Collins*, 355 So. 2d 1111 (Ala. 1978), for the general proposition that it is a proper corporate purpose for a municipality to expend public funds to defend its officials from criminal charges. *Collins*, 355 So. 2d at 1114. In *City of Montgomery v. Collins*, the Supreme Court of Alabama determined that defense of police officers from criminal perjury charges was a proper corporate purpose. However, in doing so, the court relied primarily on the fact that the city risked liability in subsequent civil litigation should the police officers be convicted. *Collins*, 355 So. 2d at 1114-15. This concern is inapplicable in the instant case. First, in *City of Montgomery v. Collins* there was no indemnity statute or ordinance at issue. Contrarily, the Illinois General Assembly has already addressed the indemnity of local public employees and the corresponding civil liability of their employing cities. See 745 ILCS 10/2—302, 9—102 (West 1994). Additionally, the commissioners and corporation counsel were convicted of official misconduct and conflict of interest charges for holding an interest in a government contract. The city is at no risk of becoming involved in civil litigation with an injured third party as a result of the convictions. In fact, if there was any victim of the commissioners' and corporation counsel's actions, it was the city itself. See *City of Chicago ex rel. Cohen v. Keane*, 64 Ill. 2d 559, 567-68 (1976) (recognizing a city's right to recover from its officials who are convicted of corruption charges).

Although plaintiffs are correct in their assertion that courts in some jurisdictions have determined that defending a public official from criminal charges may be a proper public purpose, it is generally held in these

jurisdictions that a valid public purpose exists only when the authority of the municipality is limited to the reimbursement of legal expenses incurred in a *successful* defense. See *Lomelo v. City of Sunrise*, 423 So. 2d 974, 976-77 (Fla. App. 1983) (costs of defending public official for misconduct charges served public purpose only because official was acquitted of charges); *Ellison v. Reid*, 397 So. 2d 352, 354 (Fla. App. 1981); *Snowden v. Anne Arundel County*, 295 Md. 429, 439, 456 A.2d 380, 385 (1983) (indemnity ordinance served public purpose primarily because it limited reimbursement to only those public officials who had successfully defended themselves against criminal charges); *Bowens v. City of Pontiac*, 165 Mich. App. 416, 420, 419 N.W.2d 24, 26 (1988) (Shepherd, J., concurring); *Sonnenberg v. Farmington Township*, 39 Mich. App. 446, 449, 197 N.W.2d 853, 854 (1972); *Kroschel v. City of Afton*, 512 N.W.2d 351, 355 (Minn. App. 1994); *Valerius v. City of Newark*, 84 N.J. 591, 596, 423 A.2d 988, 991-92 (1980); *Beckett v. Board of Supervisors*, 234 Va. 614, 619 n.7, 363 S.E.2d 918, 921 n.7 (1988). Still, other states have held that the cost of defending a public official from criminal or official misconduct charges is never a proper public purpose. See *Hall v. Thompson*, 283 Ark. 26, 28-29, 669 S.W.2d 905, 906-07 (1984); *Bowling v. Brown*, 57 Md. App. 248, 260, 469 A.2d 896, 902 (1984); *Corning v. Village of Laurel Hollow*, 48 N.Y.2d 348, 353-54, 398 N.E.2d 537, 540-41, 422 N.Y.S.2d 932, 935-36 (1979); *Township of Manalapan v. Loeb*, 126 N.J. Super. 277, 278-79, 314 A.2d 81, 81-82 (1974) (no authority for indemnification of municipal officer for costs of defending criminal charges which amount to official misconduct); *Silver v. Downs*, 493 Pa. 50, 55-57, 425 A.2d 359, 362-64 (1981); see also 56 Am. Jur. 2d *Municipal Corporations* § 208 (1971) (municipality has no power to reimburse an official for expenses incurred in defense of official miscon-

duct charges); 63A Am. Jur. 2d *Public Officers and Employees* § 406 (1984) (members of governing body may not expend public funds to shield themselves from consequences of own unlawful and corrupt acts); 3 McQuillin on Municipal Corporations § 12.137.10 (3d rev. ed. 1990) (municipality cannot expend money to reimburse its officer for expenses incurred in defending official misconduct charges). Under the principles of all these cases, plaintiffs would not be able to recover the expenses of the unsuccessful criminal defense of the commissioners and corporation counsel from the city.

Further, the purpose of indemnification, so as not to inhibit capable individuals from seeking public office, has no relevance in the context of the criminal conduct involved in this case. No official of public government should be encouraged to engage in criminal acts by the assurance that he will be able to pass defense costs on to the taxpayers of the community he was elected to serve. See *Powers v. Union City Board of Education*, 124 N.J. Super. 590, 596, 308 A.2d 71, 75 (1973). To the contrary, holding public officials personally liable for the expenses incurred in unsuccessfully defending charges of their criminal misconduct in office tends to protect the public and to secure honest and faithful service by such servants. Indeed, allowing expenditure of public funds for such use would encourage a disregard of duty and place a premium upon neglect or refusal of public officials to perform the duties imposed upon them by law. *Bowling v. Brown*, 57 Md. App. 248, 258, 469 A.2d 896, 901 (1984) ("[T]o reimburse [convicted public officials] for their legal expenses would not encourage the 'faithful and courageous discharge of duty on the part of public officials.' [Citation.] On the contrary, it would encourage the reverse"). The types of individuals who are drawn to these corrupt practices should not be given any incentive to seek public office.

Our holding is also compatible with the articulated purpose of the official misconduct and conflict of interest statutes, which is to keep the loyalties of public officials to their public trust undivided and to compel them to act in a lawful manner while acting in their official capacities. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 506 (1991); *Scharlau*, 141 Ill. 2d at 198; *People v. Samel*, 115 Ill. App. 3d 905, 910-11 (1983). To allow the use of public funds to reimburse a convicted official for his legal expenses would shield that official from the entire consequences of his illegal conduct, thus frustrating the purpose of those statutes. In conclusion, the city has neither the duty nor the authority to reimburse plaintiffs for legal fees incurred in the unsuccessful defense of criminal official misconduct and conflict of interest charges. Therefore, to the extent it attempts to indemnify officials convicted of crimes for their attorney fees and costs incurred in their unsuccessful criminal defense, we hold the Danville ordinance invalid. In so holding, we expressly make no determination regarding the authority of any municipality or home rule unit to indemnify its officers and employees who are found not guilty of criminal conduct.

## II. Scope of Employment

In the event that the public purpose doctrine did not prevent reimbursement of plaintiffs for their criminal litigation expenses, plaintiffs still could not recover under the ordinance or any statute because the commissioners' and corporation counsel's actions, as a matter of law, were outside the scope of their employment. We disagree with the appellate court's determination that scope of employment is not a real issue in the case. Acting within the scope of their office or employment is a prerequisite for plaintiffs to receive indemnity under the specific terms of the ordinance. Danville, Ill., Ordinance No. 7237 (eff. March 10, 1987). Moreover, a

statutory requirement for any indemnification of employees of local public entities is that the underlying act occurred within the scope of employment. 745 ILCS 10/ 2—302, 9—102 (West 1994). Finally, under a traditional *respondeat superior* analysis, an employer can be liable for the torts of his employee, however, only for those torts that are committed within the scope of that employment. See *Pyne v. Witmer*, 129 Ill. 2d 351, 359 (1989); see generally Restatement (Second) of Agency § 219 (1958). Therefore, because there are no means for the city to indemnify the commissioners and corporation counsel unless their actions were within the scope of their employment, it is dispositive in this case.

While even the criminal acts of an employee may fall within the scope of employment (see, *e.g., Webb v. Jewel Cos.*, 137 Ill. App. 3d 1004, 1006 (1985); Restatement (Second) of Agency § 231 (1958)), if the employee's actions are different from the type of acts he is authorized to perform or were performed purely in his own interest, he has departed from the scope of employment (see *Sunseri v. Puccia*, 97 Ill. App. 3d 488, 493 (1981); Restatement (Second) of Agency § 228(2) (1958)). Moreover, an employer is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of an authorized result. Serious crimes are generally unforeseeable because they are different in nature from what employees in a lawful occupation are expected to do. See Restatement (Second) of Agency § 231, Comment *a* (1958); see also *Webb*, 137 Ill. App. 3d at 1006; *Nelson v. Nuccio*, 131 Ill. App. 2d 261, 263 (1971). Further, if a deviation is exceedingly marked and unusual, the employee may be found to be outside the scope of employment as a matter of law. *Pyne*, 129 Ill. 2d at 361.

We recognize that this case does not involve the circumstances typically present in a traditional *respondeat*

*superior* analysis—when an injured third party attempts to hold an employer vicariously liable for the torts of an employee. Nevertheless, the principles advanced in the context of imposing vicarious liability upon an employer are applicable in cases seeking to impose duties upon a public entity to indemnify and defend its employees because both liabilities are premised upon employee acts occurring within the scope of employment. See *Deloney v. Board of Education*, 281 Ill. App. 3d 775 (1996). In applying these principles to the case at bar, it is clear that the commissioners' and corporation counsel's self-dealing was committed solely for their personal benefit and had no relation to their positions as elected officials. Although the commissioners had authority to negotiate a settlement of the voting rights lawsuit, utilizing the negotiations to illegally advance their own personal interests by preserving their employment was an action obviously different from those they were authorized to perform. No elected official can be authorized to act in a manner that violates official misconduct and conflict of interest statutes. *Hall v. Thompson*, 283 Ark. 26, 28-29, 669 S.W.2d 905, 906-07 (1984) (official duties of a public official never require him to participate in criminal activities). Moreover, this court has already determined that the commissioners' and corporation counsel's acts were unauthorized. *Scharlau*, 141 Ill. 2d at 196.

Additionally, the group's actions, which resulted in their convictions of official misconduct and conflict of interest charges, were clearly committed for their own interests. A conviction for corrupt practices establishes that a public official exploited his fiduciary position for his personal benefit. *City of Chicago ex rel. Cohen v. Keane*, 64 Ill. 2d 559, 565 (1976). Furthermore, the essence of a violation of the statute "is that a public official has attempted to personally enrich himself or another by an act exceeding his 'lawful authority' as a

public servant." *People v. Samel*, 115 Ill. App. 3d 905, 909 (1983). The official misconduct statutes are intended to punish the activities of public officials who have exploited their official positions to the detriment of the public good. *People v. Steinmann*, 57 Ill. App. 3d 887, 897 (1978). The commissioners and corporation counsel admitted that they would not have settled the voting rights action without the provisions ensuring their continued employment for a fixed term and the right to set their own salaries. In addition, the group knew that they were not legally entitled to these provisions. Such self-dealing can be nothing more than acting purely in one's own interests. See *Board of Chosen Freeholders of the County of Burlington v. Conda*, 164 N.J. Super. 386, 390, 396 A.2d 613, 617 (1978) (misconduct involving personal gain at public expense cannot be said to benefit the public).

While the commissioners' and corporation counsel's public employment provided the opportunity for their misconduct, by no stretch of the imagination could their actions be deemed an extension of their legitimate functions as elected officials. Therefore, their conduct neither arose out of nor was incidental to the performance of their duties and, thus, was not within the scope of their employment. See *Bowling v. Brown*, 57 Md. App. 248, 258, 469 A.2d 896, 901 (1984); *Valerius v. City of Newark*, 84 N.J. 591, 596, 423 A.2d 988, 990-91 (1980) (criminal conviction for misuse of office constitutes a "perversion and prostitution" of duties and establishes that the acts were not within scope of employment); *Powers v. Union City Board of Education*, 124 N.J. Super. 590, 596, 308 A.2d 71, 75 (1973) (criminal misconduct originating out of performance of duties was not act occurring within the scope of those duties). In this case, the record clearly reveals that the commissioners and corporation counsel stepped aside from their

duties as officers of the City of Danville and acted for the sole, unlawful, independent, and personal purpose of promoting their own interests. As a matter of law, their actions were outside the scope of their employment such that the city owed no statutory duty to defend or indemnify them in the criminal action.

### III. Collateral Estoppel

The city also contends that inherent in the commissioners' and corporation counsel's criminal convictions is the determination that they also acted outside the scope of their employment. The city then reasons that the doctrine of collateral estoppel thus bars plaintiffs from relitigating the scope of employment issue in this case. Plaintiffs respond that scope of employment was not an issue decided in *People v. Scharlau*. Alternatively, plaintiff Kevin Scharlau independently argues that he cannot be bound by any determinations made in *People v. Scharlau* because Wilbur Scharlau's conviction was vacated.

Notwithstanding these contentions, we determined today that, as a matter of law, by virtue of their criminal convictions the commissioners and corporation counsel acted outside the scope of their employment. Furthermore, we determined that the public purpose doctrine prevents reimbursement of plaintiffs in this instance. Therefore, we need not address whether *People v. Scharlau* decided the scope of employment issue or the effect of collateral estoppel upon this litigation.

### IV. Common Law Indemnity

Plaintiffs also contend that they are entitled to reimbursement of their legal expenses under a common law theory of indemnity. They cite cases for the general proposition that a principal is required to indemnify an agent for losses resulting from the good-faith execution of the agency. See *Lundy v. Whiting Corp.*, 93 Ill. App.

3d 244, 258 (1981); *American Telephone & Telegraph Co. v. Leveque*, 30 Ill. App. 2d 120, 128 (1961); *Lomelo v. City of Sunrise*, 423 So. 2d 974, 976 (Fla. App. 1983); *Ellison v. Reid*, 397 So. 2d 352, 354 (Fla. App. 1981); *State ex rel. Crow v. City of St. Louis*, 174 Mo. 125, 148, 73 S.W. 623, 630 (1903). However, none of these cases support plaintiffs' position. *American Telephone & Telegraph Co. v. Leveque* and *Lundy v. Whiting Corp.* both dealt with the issue of implied indemnity among joint tortfeasors. Specifically, when two tortfeasors have breached a duty to a plaintiff, the passively negligent tortfeasor may be allowed to shift liability to the actively negligent tortfeasor. See *American Telephone & Telegraph Co.*, 30 Ill. App. 2d at 127-28; *Lundy v. Whiting Corp.*, 93 Ill. App. 3d at 258. This theory is not applicable to the instant case and plaintiffs have conceded as much in their briefs.

The other cases offered by plaintiffs stand for the propositions that a public official acting pursuant to authority, within the scope of employment, and while serving a public purpose may be indemnified by a municipality for expenses he incurs. See *Lomelo*, 423 So. 2d at 976; *Ellison*, 397 So. 2d at 354; *State ex rel. Crow*, 174 Mo. at 148, 73 S.W. at 630. We have already determined that the commissioners and corporation counsel were not acting pursuant to authority or within the scope of their employment and they were not serving a public purpose. Therefore, plaintiffs' action for common law indemnity also must fail.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court dismissing the complaint is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

CHIEF JUSTICE BILANDIC took no part in the consideration or decision of this case.