2024 IL App (1st) 232479
Opinion filed March 18, 2024

Third Division

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 10584 |
| | ) | |
| DAMARCO WATKINS-ROMAINE, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices D.B. Walker and R. Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1     In the proceedings below, the trial court observed that even relatively low monetary bail requirements frequently operated as *de facto* "no bail" orders for those without financial means under our previous system of bail. When the General Assembly used Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act, to amend article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), it enacted sweeping bail reform. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 & n.1 (noting neither "(SAFE-T) Act" nor "Pretrial Fairness Act" are "official" names but common shorthand for sequence of public acts).

One such change was the complete abolition of monetary bail. 725 ILCS 5/110-1.5 (West 2022). This meant that pretrial detention or release would be based on the unique circumstances of the case and the defendant, and never on the defendant's financial means. See, *e.g.*, *id.* §§ 110-5, 110-6.1. The legislature also implemented a mechanism to address those defendants who were ordered released pursuant to conditions but who nevertheless remained in custody after these bail reforms went into effect. See *id.* § 110-7.5.

¶ 2     Defendant Damarco Watkins-Romaine appeals the trial court's order denying him pretrial release pursuant to section 110-6.1 of the Code. *Id.* § 110-6.1. At issue in this appeal is the scope of the State's power to petition for the pretrial detention of defendants who were previously ordered released prior to the Code's amendment but remained in custody through no fault of their own.

¶ 3     For the reasons that follow, we reverse the judgment of the trial court and remand.

¶ 4                                I. BACKGROUND

¶ 5     The State charged defendant with five counts of attempted first degree murder, one count of aggravated battery with a firearm, and one count of aggravated discharge of a firearm, all stemming from an incident that took place on November 23, 2022.[1] At an initial bond hearing on September 1, 2023, the State requested a "no bail" order. Citing the highly circumstantial nature of the evidence, the trial court rejected the State's request, finding that the State had not demonstrated that the proof was evident or the presumption was great that defendant committed the charged offenses. However, the trial court imposed a bond of $350,000-D and ordered

_____

[1]The record does not contain the charging documents, so we have recited the allegations as they are listed throughout various pleadings in the record and the memoranda filed with this court.

defendant to surrender his Firearm Owner's Identification (FOID) card and any firearms. The trial court also ordered electronic monitoring until further order of court. As far as the record indicates, defendant was never released.

¶ 6    Shortly after the trial court's ruling, the General Assembly's amendments to article 110 of the Code went into effect on September 18, 2023. *Rowe*, 2023 IL 129248, ¶ 52.

¶ 7    On December 7, 2023, defendant filed a petition for release from detention, citing sections 110-5 and 110-7.5(b) of the Code. Even though defendant was in custody, the State filed a petition for pretrial detention. At a hearing on December 13, 2023, both parties provided factual proffers.

¶ 8                                    The State's Proffer[2]

¶ 9    According to the State, the victim left her boyfriend's house at 10:18 p.m. on November 23, 2022, after assisting with preparations for Thanksgiving dinner. She got into her car and noticed a white SUV parked next to her. As she drove, the white SUV followed her through multiple turns and, at one point, even cut through a gas station. The victim merged onto Interstate 57 (I-57), and the SUV continued to follow her. As she was driving in the rightmost lane, gunfire shattered one of her windows, and she saw a black male with short hair and facial hair firing at her from the SUV. She pulled over and called 911, and an officer found her alongside the road in a pool of blood inside the vehicle. The victim sustained two gunshot wounds to each leg, as well as one to the stomach. A number of 9-millimeter cartridge cases were located on the expressway.

¶ 10    The white SUV was ultimately identified as belonging to defendant's girlfriend, who told investigating officers that she had not driven the vehicle in some time because she lost the keys. She later told officers that she allowed her cousin to borrow the vehicle and he returned it around

---

[2]Although the proffer was not identical to the one made on September 1, 2023, there was no new information or new incidents to differentiate the two.

10 p.m. on the night in question. A search of the SUV yielded ammunition consistent with the "make and model" of the spent casings recovered from I-57. The vehicle was also swabbed for DNA, some of which matched defendant's.

¶ 11    Defendant's phone was seized when he was taken into custody on an unrelated matter, and it was discovered that defendant's phone was in the vicinity of the shooting at the relevant time. Messages on defendant's phone, as summarized by the State, referenced "Thanksgiving and taking revenge" and that defendant had a "prior beef, for lack of a better term, with the victim's boyfriend." The home the victim left just prior to the shooting was that of her boyfriend. Another message stated, "I have done got to a point where I'm saving bond money just to do what I want to do." A Facebook post also referenced "shooting up" the victim's boyfriend's house.

¶ 12    Finally, defendant possessed a FOID card and had previously purchased multiple firearms, as well as ammunition that was the same caliber and brand as the casings recovered at the scene and the live rounds found in the SUV.

¶ 13    The State made conclusory statements that defendant poses a real and present threat to the community and that no condition or combination of conditions could mitigate that threat and asked that the trial court detain defendant.

¶ 14                          Defendant's Proffer

¶ 15    According to defense counsel, the victim was unable to identify defendant and described the shooter as a light-skinned black male, while defendant is a dark-skinned black male. The victim also told police that she believed it was probably her ex-boyfriend, a different individual from defendant, who shot her.

¶ 16    The DNA profiles of four unidentified people, in addition to defendant's DNA, were found inside the SUV. The unidentified DNA was found on the steering wheel, the gear shift lever, and

some cigarette butts. Fingerprints found on the SUV's rearview mirror also did not match defendant's fingerprints.

¶ 17    Differing from the State's proffer, defense counsel asserted that defendant's girlfriend claimed her cousin borrowed the SUV and returned it "between 10:00 and 11:00 that evening." The cousin was killed in a homicide two days later.

¶ 18    None of the shell casings recovered could be verified to contain defendant's DNA, as none of the samples were suitable for testing, and defense counsel disputed the relevancy of the cell tower data, claiming that cell phones use the tower that provides the best signal and not necessarily the closest one. Defense counsel also pointed out that there was no proof defendant was the one who authored the text messages or Facebook post and that they made no reference to any particular person.

¶ 19    Finally, defense counsel stated that defendant was 29 years old, his family lived in the Cook County area, he owned his own catering business, and he served as the primary financial provider for his girlfriend and their two children. Defendant had no prior felony convictions, no history of violence, and no instances of bond forfeitures, and he was not on parole or probation at the time he was arrested for the instant offense.

¶ 20    At no time did defendant object to the State's filing of a petition for detention.

¶ 21                    The Trial Court's Ruling

¶ 22    The trial court granted the State's petition for detention, and it found that the State proved by clear and convincing evidence that the proof was evident or the presumption was great that defendant committed the charged offenses. Its oral pronouncement did not address whether the State met its burden as to the dangerousness element or whether any combination of conditions could mitigate the threat posed by defendant. Regarding these second and third elements, the trial

court's written order recited the facts that defendant shot the victim five times, that defendant made Facebook posts and sent text messages threatening to "shoot up" the victim's boyfriend's house, and that he was saving up bond money.

¶ 23 During its discussion of its ruling, the trial court referenced defendant's prior bond amount, stating:

> "In this case it was $350,000-D, which operated as a no-bail in this case and did in many, many cases. In fact, I think that was one of the arguments for reform because the reality was for many people without financial means, even a $20,000-D bond in any case could operate as a no-bail. That is one of the main arguments for bond court reform which this Court is in agreement with.
>
> If it is a detention, it should be a detention. Call it what it is. Versus saying a $1,000,000 D-bond on a person who is not working. That is a no-bail. So call it what it is. That is what the new statute requires us to do."

¶ 24 Defendant timely appealed the detention order (Ill. S. Ct. R. 604(h)(2) (eff. Oct. 19, 2023)), and both parties filed a memorandum. On appeal, defendant argues that the State failed to meet its burden of proof on every element. Defendant also argues that the State's petition for detention was untimely, though he acknowledges that this issue was not properly preserved.

¶ 25                                       II. ANALYSIS

¶ 26 The central question before us is whether the Code, outside of the specific timing requirements of section 110-6.1(c), permits the State to seek the pretrial detention of an individual who is already in custody because he was granted bail under the previous statutory scheme but who nevertheless could not satisfy one of the conditions of his release.

¶ 27    Defendant did not object to the State's petition for pretrial detention, nor was this issue raised in defendant's Rule 604(h) notice of appeal. However, we may still reach this issue because a misapplication of the law that affects a defendant's fundamental right to liberty constitutes plain error. *People v. Brown*, 2023 IL App (1st) 231890, ¶ 12 (citing *People v. Smith*, 2016 IL App (1st) 140496, ¶ 15). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 28    The question of whether the State's petition for detention was timely is one of statutory construction, which we review *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45. A court's fundamental objective in addressing issues of statutory construction is to ascertain and give effect to the legislature's intent. *Id.* The plain language of a statute is the most reliable indication of the legislature's objectives in enacting that particular law. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). In determining the legislature's intent, a court " 'may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims.' " *Taylor*, 2023 IL 128316, ¶ 45 (quoting *People v. Pullen*, 192 Ill. 2d 36, 42 (2000)). In addition, we presume that, in enacting the statute, the legislature did not intend to produce absurd, inconvenient, or unjust results. *Id.*

¶ 29    Where the statutory language is clear and unambiguous, we will enforce it as written and will not read into it exceptions, conditions, or limitations that the legislature did not express. *Sigcho-Lopez v. Illinois State Board of Elections*, 2022 IL 127253, ¶ 27. The terms in a statute are also not to be considered in a vacuum. *Corbett v. County of Lake*, 2017 IL 121536, ¶ 27. Rather, the words and phrases in a statute must be construed in light of the statute as a whole, with each provision construed in connection with every other section. *Id.* Furthermore, the statute should be

read so that no term is rendered superfluous or meaningless. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010).

¶ 30      Section 110-6.1(c) of the Code sets out specific time limitations that dictate when the State may file a petition for pretrial detention. Such a petition may be filed either (1) at the defendant's first appearance before a judge without notice to the defendant or (2) within 21 calendar days after the defendant was arrested *and* released, with reasonable notice to the defendant. 725 ILCS 5/110-6.1(c)(1) (West 2022).

¶ 31      Section 110-7.5 of the Code specifically addresses individuals like defendant who were arrested prior to the amended Code's effective date. In relevant part, section 110-7.5 provides:

> "(a) On or after January 1, 2023, any person having been previously released pretrial on the condition of the deposit of security shall be allowed to remain on pretrial release under the terms of their original bond. This Section shall not limit the State's Attorney's ability to file a verified petition for detention under Section 110-6.1 or a petition for revocation or sanctions under Section 110-6.
>
> (b) On or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." *Id.* § 110-7.5(a), (b).

¶ 32      Section 110-5(e) provides detail on the hearing to which a defendant is entitled:

> "If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for continued detention. If the reason for continued detention is due to the unavailability or the

defendant's ineligibility for one or more pretrial conditions previously ordered by the court or directed by a pretrial services agency, the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release. The inability of a defendant to pay for a condition of release or any other ineligibility for a condition of pretrial release shall not be used as a justification for the pretrial detention of that defendant." *Id.* § 110-5(e).

¶ 33    *Brown* confronted a similar issue where the defendant was granted release with electronic monitoring under the prior system of bail on June 24, 2023. *Brown*, 2023 IL App (1st) 231890, ¶ 3. As of September 26, 2023, when the defendant filed a petition to modify the conditions of his release and the State filed a petition for detention, the defendant remained in custody and had not been released. *Id.* ¶ 5. Even though the defendant had been previously ordered released, the trial court granted the State's petition for pretrial detention. *Id.* ¶ 8. We reversed, finding that the State's petition was not timely because it was not filed for three months after the defendant's first appearance before a judge. *Id.* ¶ 13.

¶ 34    Defendant's circumstances in the case at bar are not meaningfully different. An initial bond hearing was held on September 1, 2023, at which time the State requested that the trial court enter a "no bail" order. The State did not file its petition for detention until December 7, 2023, which was not at defendant's first appearance. Nor did the State file its petition within 21 days of defendant's arrest and release—it could not have been because defendant was never released. *Id.* § 110-6.1(c)(1). Thus, like in *Brown*, the State's petition here was untimely.

¶ 35     We acknowledge that other courts have interpreted these timeliness requirements differently. In *Whitmore*, for example, this court held that "for individuals detained prior to the effective date of the Act who elect to seek relief under the amended Code—and only for such individuals—the State may file a petition for the denial of pretrial release 'at the first appearance before a judge' after the effective date of the Act." *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 15 (quoting 725 ILCS 5/110-6.1(c) (West 2022)). This conclusion was based upon the fact that section 110-7.5(a) of the Code states that " '[t]his Section shall not limit the State's Attorney's ability to file a verified petition for detention.' " *Id.* ¶ 11 (quoting 725 ILCS 5/110-7.5(a) (West 2022)).

¶ 36     The Fourth District in *Jones* resolved this timeliness issue by noting that section 110-6 of the Code allows the trial court, after motion by either party or on its own motion, to modify conditions of release at any time. *People v. Jones*, 2023 IL App (4th) 230837, ¶ 16; 725 ILCS 5/110-6 (West 2022). Therefore, *Jones* concluded, a petition for detention "operates as a motion to increase the pretrial release conditions to the furthest extent." *Jones*, 2023 IL App (4th) 230837, ¶ 17. *Jones* also reasoned that, once a defendant seeks to have his pretrial release conditions reviewed, "the matter returns to proverbial square one." *Id.* ¶ 23. Several other courts have adopted *Jones*'s reasoning. See, *e.g.*, *People v. Gray*, 2023 IL App (3d) 230435, ¶¶ 14-15 (where the defendant was arrested and detained prior to the implementation of the amended Code, remained in detention, and filed a motion to modify conditions of pretrial release, the State may file a petition for pretrial detention); *People v. Robinson*, 2024 IL App (5th) 231099, ¶ 24.

¶ 37     As in *Brown*, we reject these interpretations. *Brown*, 2023 IL App (1st) 231890, ¶ 20. *Whitmore*'s holding that the Code permits the State to file a petition at the defendant's first

appearance "after the effective date of the Act" requires a reading of the Code that its plain language cannot bear. (Internal quotation marks omitted.) *Whitmore*, 2023 IL App (1st) 231807, ¶ 15. Nowhere does the Code provide that the State may file a petition on defendant's first court date after the amended Code went into effect. *Whitmore*'s flawed conclusion rested on the clause from section 110-7.5(a) that states "This Section shall not limit the State's Attorney's ability to file a verified petition for detention under Section 110-6.1 or a petition for revocation or sanctions under Section 110-6." 725 ILCS 5/110-7.5(a) (West 2022). But that clause does not permit us to read additional, more lenient timing requirements into the statute or to do away with timing requirements altogether.

¶ 38    The Code provides that the State may file a petition for detention at the first appearance or within 21 days of the defendant's arrest and release. *Id.* § 110-6.1(c)(1). Even assuming that the aforementioned clause in section 110-7.5(a) applies to those in defendant's position and not just those already released, the fact that it places no limits on the State's ability to file a petition does not mean there are *no limits*. *Whitmore*'s holding amounts to claiming that the legislature did not mean what it said when it created section 110-6.1(c)(1)'s timing requirements. *Id.* §110-6.1(c)(1).

¶ 39    The fact that the Code's timing requirements do not account for a defendant's first appearance after the amendment's effective date should not and cannot be seen as an oversight. The existence of section 110-7.5 of the Code demonstrates that the legislature foresaw the need to account for pending cases with preexisting bail rulings when the amended Code went into effect. Thus, it is telling that the prescribed procedure for individuals in defendant's position is a hearing only to determine the reasons for the continued detention. *Id.* §§ 110-7.5(b), 110-5(e). If the legislature wanted the hearing triggered by section 110-7.5(b) to include reconsideration of

whether a defendant is eligible for release or if it wanted to give the State the ability to file a petition for detention against defendants who had already been ordered released but remained in custody after the effective date of the amended Code, it would have said so.

¶ 40    Likewise, the conclusion in *Jones* that a petition for detention "operates as a motion to increase the pretrial release conditions to the furthest extent" is equally flawed. *Jones*, 2023 IL App (4th) 230837, ¶ 17. This can be seen in the fact that the question of detention and the questions of the conditions of release to be imposed or revocation are separate mechanisms found in different sections of the Code. Compare 725 ILCS 5/110-6.1 (West 2022), with *id.* §§ 110-5, 110-6. Section 110-6 permits the State to file a petition for revocation of pretrial release or a petition for sanctions, neither of which is what the State filed in this case. *Id.* § 110-6(a), (d).

¶ 41    Petitions for revocation or sanctions may only be filed in narrow, specific circumstances. For defendants granted pretrial release for a felony or Class A misdemeanor, pretrial release can only be revoked if the defendant is charged with another felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release. *Id.* § 110-6(a). The State may also only file a petition for sanctions in limited circumstances that do not apply to defendant's case, such as when a defendant violates a condition of pretrial release. *Id.* § 110-6(c), (d), 110-3. In fact, the conclusion in *Jones* makes little sense because section 110-6 does not contemplate the State's ability to request additional conditions or increase the severity of conditions of release outside the aforementioned triggering events for revocation or sanctions.

¶ 42    Indeed, the fact that the legislature prescribed these two avenues of relief for the State, revocation or sanctions, specifically demonstrates that petitions for pretrial detention are not intended to function the way the State has utilized them here. See *People v. Roberts*, 214 Ill. 2d

106, 117 (2005) (the maxim *expressio unius est exclusio alterius* means "the expression of one thing is the exclusion of another" (internal quotation marks omitted)). The legislature set out clear procedures to address the need for revocation or adjustment of conditions of release for those individuals released prior to trial, and petitions for detention are not one of them. 725 ILCS 5/110-6 (West 2022). *Jones*'s interpretation of the Code would seem to permit an end-run around the clearly defined, limited circumstances where the State may take action against a defendant who has been released pretrial.

¶ 43    Finally, *Jones*'s conclusion that the "matter returns to proverbial square one" any time a defendant requests to review the conditions of release has no basis in the plain language of the Code. *Jones*, 2023 IL App (4th) 230837, ¶ 23. Not only did *Jones* make that assertion without even a perfunctory citation of any language of the Code or other authority, but it is squarely at odds with the language that is in the Code. *Id.*

¶ 44    The Code requires the trial court, at every subsequent appearance of the defendant, to find that the current conditions "are necessary to reasonably ensure the appearance of the defendant as required, the safety of any other person, and the compliance of the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(f-5) (West 2022). Notably, the trial court need not be presented with new information or a change in circumstances to remove a pretrial condition. *Id.* Furthermore, "the court may, at any time, after motion by either party or on its own motion, remove previously set conditions of pretrial release, subject to the provisions in this subsection." *Id.* § 110-6(g). But as mentioned above, modifications in the form of sanctions or in lieu of revocation can only occur in specific circumstances.

¶ 45     If the State were permitted to file a petition for detention whenever the conditions of pretrial release are put at issue, it would mean the State could do so every court date because the defendant's conditions of release are statutorily required to be put at issue every time the defendant appears. *Id.* § 110-5(f-5). *Jones*'s holding creates an absurd result, which is one of the outcomes we are commanded to avoid when performing statutory construction. *Taylor*, 2023 IL 128316, ¶ 45. Take defendant's own case as an example: he was originally granted release contingent upon satisfying a $350,000 "D-bond" and he subsequently sought modification of his pretrial release conditions to "the least restrictive conditions necessary." It would, of course, be fair to permit the State to argue in favor of particular conditions that it believes are necessary or against their removal. But where would the sense be in returning the matter to "proverbial square one" and allowing the State to seek pretrial detention when the trial court already found defendant eligible for release on September 1, 2023? This is particularly true when there was no evidence that defendant's circumstances had changed or that defendant had taken any action that, for example, might otherwise warrant a petition to revoke or a petition for sanctions.

¶ 46     The legislature accounted for those who were ordered released under the prior bail system but could not be released due to some circumstance beyond their control. 725 ILCS 5/110-7.5(b), 110-5 (West 2022). It would be immensely unfair to permit the State to have a second bite at the detention apple simply because defendant exercised his statutory right to try to find a way to fulfill the trial court's preexisting order that he could be released.

¶ 47     Accordingly, neither *Whitmore* nor *Jones* nor cases that rely on them can be followed, because they are inconsistent with the plain language of the amended Code. Since *Brown* was decided, however, this court also decided *Haisley*, which the State urges us to follow. There we

held that the State's petition for detention against the defendant, who had not been released from custody, was not untimely because the 21-day time limit in which to file a petition for detention never began to run. *People v. Haisley*, 2024 IL App (1st) 232163, ¶ 22.

¶ 48   This interpretation, too, strains the plain language of the amended Code. Section 110-6.1(c) does not give the State the authority to file a petition for detention at the defendant's first appearance, or at any time while defendant is in custody, or within 21 days after his arrest and release. 725 ILCS 5/110-6.1(c) (West 2022). The timing requirements are clear and unambiguous. The State may file such a petition at the first appearance or within 21 days *after* defendant's arrest *and* release. *Id. Haisley*, like *Whitmore*, is reading additional language into the statute that simply does not exist.

¶ 49   A commonsense reading of the timing requirements in subsection 110-6.1(c) is not that, if a defendant is never released from custody, the State's window to file a petition for detention never closes. The structure of the Code and the various remedies available to the State clearly indicate the legislature's intent. Petitions for detention are the mechanism the State may use to detain defendants at the start of the case, at either the first appearance or within 21 days of their arrest and release. *Id.* § 110-6.1(c).[3]

¶ 50   If those petitions are unsuccessful, or the State chooses not to file one, and defendants are granted pretrial release, the State then has petitions to revoke pretrial release or petitions for sanctions available to it. *Id.* § 110-6. But for individuals who were granted release under the prior

---

[3] Indeed, the 21-day time limit appears to presume that defendant was arrested and released without ever being brought before a judge. If it did not, and the 21-day time limit encompassed time after the trial court granted a defendant pretrial release, that would create a conflicting overlap with petitions to revoke during that time period.

bail system yet remained in custody through no fault of their own, section 110-6.1 of the Code is silent and provides no remedy for the State. The reason why is readily apparent. A petition for detention would be redundant, because the defendant is already in custody, and misplaced, because the trial court already determined the defendant was eligible to be released.

¶ 51   The question lying at the heart of this issue, which has repeatedly gone unaddressed, is thus: why should the State get another attempt at detention because the legislature changed the law? In defendant's case, the State already unsuccessfully sought a "no bail" order under a standard that is meaningfully indistinguishable from the first element the State must now prove to justify pretrial detention. Compare *id.* § 110-4(a) with *id.* § 110-6.1(e)(1). The monetary bond requirement was undoubtedly an impediment to defendant's release here. But nothing in the amended Code indicates that the State should get a do-over now that defendant's monetary bond requirement no longer functions, as the trial court observed, as a *de facto* "no bail" order.

¶ 52   As we have discussed, the legislature anticipated the issues that might arise from defendants with preexisting release orders as we transitioned from the prior bail system to the new one. *Id.* § 110-7.5. If the legislature wanted the enactment of the amended Code to wipe the slate clean, so to speak, and allow the State to file petitions for detention as if cases were starting from zero, it surely could have done so. Yet, the timing requirements for filing petitions for detention are profoundly simple and straightforward. We cannot agree with *Haisley*'s attempt to read additional language into the statute that does not exist, which is contrary to our well-established canons of statutory construction. *Sigcho-Lopez*, 2022 IL 127253, ¶ 27.

¶ 53   For all these reasons, we believe that the legislature did not intend to allow the State to file a petition for pretrial detention under the circumstances of defendant's case and that the State's

petition for detention was untimely. Defendant was previously ordered released on electronic monitoring, subject to the deposit of a monetary bond. The only action contemplated by the Code in this situation is the hearing required by sections 110-7.5(b) and 110-5(e). Defendant is entitled to that hearing to determine why he remained in custody for nearly three months after the amended Code went into effect and eliminated the requirement of posting a monetary bond. Upon remand, defendant should receive the hearing to which he is entitled to determine if there are conditions available that will reasonably ensure the appearance of defendant, the safety of any other person, and the likelihood of compliance by defendant with all the conditions of pretrial release. 725 ILCS 5/110-5(e) (West 2022).

¶ 54    Because we resolve this appeal on procedural grounds, we need not address defendant's argument that the State failed to meet its burden of proof at the hearing on its petition for pretrial detention. Accordingly, we reverse the trial court's December 13, 2023, order and remand this matter for further proceedings consistent with this opinion.

¶ 55                                    III. CONCLUSION

¶ 56    For the foregoing reasons, we reverse the trial court's grant of the State's petition for pretrial detention and remand for further proceedings.

¶ 57    Reversed and remanded.

## *People v. Watkins-Romaine*, 2024 IL App (1st) 232479

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CR-10584; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| **Attorneys for Appellant:** | James F. DiQuattro, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Sara McGann, Assistant State's Attorney, of counsel), for the People. |